# IN THE COURT OF APPEALS OF IOWA

No. 24-1800
Filed July 2, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LANCE EMANUEL BATTISTE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Thomas P. Murphy,

Judge.

        A defendant appeals his sentence for second-degree theft.  **SENTENCE**

**VACATED AND CASE REMANDED.**

        Austin Jungblut of Parrish Kruidenier L.L.P., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney

General, for appellee.

        Considered without oral argument by Tabor, C.J., and Ahlers and

Langholz, JJ.

**LANGHOLZ, Judge.**

In selecting Lance Battiste's suspended prison sentence—rather than the deferred judgment Battiste wanted or the incarceration urged by the State—the district court relied on the nature of his "sophisticated crime." Battiste argues that this was error because while the minutes of testimony described a sophisticated scheme of stealing the victim's identity to wire $88,641.29 from the victim's line of credit to a bank account held by Battiste—constituting identify theft and first-degree theft—he did not admit to this conduct when pleading guilty to second-degree theft nor did the State otherwise prove it. We agree. So we must vacate the sentence and remand for resentencing by the district court without consideration of this unproven conduct.

I.

Battiste pleaded guilty to second-degree theft in violation of Iowa Code sections 714.1(1) and 714.2(2) (2021) as a part of a plea deal resolving his charges for identity theft and first-degree theft. In his written guilty plea, he admitted:

> I received and exercised control over property (money) that was stolen and I had reasonable cause to believe that the money had been stolen. I had the intent to permanently deprive its owner of it and did not take any steps to return the property to him and instead spent it on goods for myself. The money I spent was $8,641.29.

His plea also agreed "that a jury could find me guilty on each charge for which I am pleading guilty if the witnesses testified as set forth in the minutes of testimony" and that "[t]he court may rely on the minutes of testimony for a further factual basis for my guilty plea." The plea did not include any other admission that the minutes of testimony are true.

Those minutes describe that a victim living in Dallas County discovered that his credit union had extended him $88,641.29 on a $90,000 line of credit that he had opened for emergencies but never used. On further investigation, the credit union's fraud department said that someone had called in and changed his phone number and email associated with the accounts, correctly giving proper pass codes and answers to security questions. And then, a transaction was made drawing down from the line of credit to the victim's savings account. "An electronic document was sent to the [newly updated] email address to gather an electronic signature," and the credit union received back a signature and completed the transaction. Then, the money was transferred from the savings account by wire transfer to a bank account at another institution.

The minutes also describe that the wire-transfer request was initiated from an IP address for a hotel in Houston, Texas. Battiste was not on the list of guests checked into the hotel at the time of the request. But Battiste was the holder of the bank account receiving the funds. And he lived near Dallas, Texas. The bank account's statements showed that over the week after the funds were wired to the account, they were withdrawn in various ways. That included a debit-card transaction at a Dallas-area store buying a $2100 luxury bag, which was seen being held by Battiste's wife in multiple social media posts.

The presentence investigation report ("PSI") did not include a full description of the official version or the victim's version of the offense. Rather, it just said "See Trial Information and Minutes of Testimony" for the official version and "See Minutes of Testimony" for the victim's version. But Battiste gave a statement of his version of the offense that was included in the PSI in full: "I met a guy who said

he would invest in a trucking company I wanted to start. He said he could help me get a truck under my LLC. So I gave him my account information and he said he would put money in the account."

At sentencing, the prosecutor argued for a five-year prison sentence. She urged the court to look to the minutes of testimony, emphasizing that they showed that Battiste "called" the victim's credit union, "changed a number of questions," and "used the [victim's] information to access that line of credit." And she argued that these facts showing "how this crime was committed" were "particularly concerning" because Battiste had worked at "a finance establishment" and for an insurance company since "[t]hose are places where the defendant would have access to a lot of personal information of people who hold accounts in those establishments, things like: social security numbers, addresses, bank account numbers, routing numbers."

Battiste did not acquiesce to this reliance on the minutes of testimony. In arguing for a deferred judgment, his attorney reiterated that he "pled guilty to a theft in the second degree, not to everything that he has been charged with." She emphasized that Battiste "will acknowledge his part of this crime," but "there is a reason why you're not getting any of that evidence that is alleged . . . in the Minutes." And she urged the need "to be very clear to what he pled guilty to versus what has been laid out in the State's argument today."

In his allocution too, Battiste reaffirmed his statement in the PSI, rejecting the State's version of the facts:

> I came across a guy who was willing to invest in a company for me. And it turned out to be—to not be what—what he said [it] was. . . . I guess you can kind of say I've been very sheltered because . . . I

have, you know, a small type of community that . . . I usually, you know, hang around with. . . . [S]o once meeting other people and kind of—I kind of just take people at what they say.

. . .

The honest truth was I honestly thought that someone was going to be investing. But of course I—the reason why I took the plea is because when I looked at it I'm like, okay. Once [my attorney] explained to me the law as far as theft and your part in theft, I kind of looked at, like, okay, well, receiving funds that are stolen that I might be iffy about is wrong. And I feel like, you know, I definitely need to be—need to take responsibility for that.

Ultimately, the district court rejected both parties' sentencing recommendations and imposed a suspended five-year prison sentence. As part of its explanation for the decision, the court reasoned, "I can't undermine the nature of this offense. It's a sophisticated crime. You should have known better at your age. And you're obviously an intelligent guy. So I'm somewhat concerned about that." And the court reiterated again when explaining its decision not to grant a deferred judgment, "The reason I'm not ordering a deferred is because of the nature of the crime. Okay? It's fairly sophisticated. It will prohibit you from working—the conviction will prohibit you from working in the financial or insurance industries under the federal Crime Control Act of 1994."

Battiste now appeals his suspended sentence, arguing that the district court improperly relied on unproven criminal activity described in the minutes of testimony in considering the nature of offense. He also argues that the court improperly considered *only* the nature of the offense in selecting the sentence. But we address only the first argument because it fully resolves this appeal.

II.

We review a district court's discretionary sentencing decisions for an abuse of discretion. *See State v. Gordon*, 998 N.W.2d 859, 862 (Iowa 2023). This deferential standard of review recognizes that the court's decision "to impose a particular sentence within the statutory limits is cloaked with a strong presumption in its favor." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). And "our task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds." *Id.* at 725.

Even so, a court "cannot consider unproven or unprosecuted offenses in fashioning a defendant's sentence unless the defendant admits them or facts are presented to prove them." *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024) (cleaned up). This includes "[i]nformation contained in the minutes of testimony" unless the facts "are admitted to or otherwise established as true." *State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) (cleaned up). "[W]here portions of the minutes are not necessary to establish a factual basis for the guilty plea, they are denied by the defendant, and they are otherwise unproved, we find no basis to allow the sentencing court to consider and rely on these portions." *State v. Black*, 324 N.W.2d 313, 316 (Iowa 1982). Indeed, relying on such an improper consideration in sentencing is an abuse of discretion that requires resentencing, "even if it was merely a secondary consideration." *Schooley*, 13 N.W.3d at 618 (cleaned up). But a defendant has the burden to "show that the sentencing court relied on improper evidence." *State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018).

Here, the district court twice discussed its reliance on the "sophisticated" nature of Battiste's criminal conduct. First, when discussing all the factors it

considered when selecting the sentence. And then again when reasoning that a deferred judgment was not appropriate because an actual conviction would prohibit him "from working in the financial or insurance industries under the federal Crime Control Act of 1994." Problem is, there is nothing "sophisticated" about the factual circumstances that Battiste admitted to in his guilty plea, during the presentence investigation, or at the sentencing hearing. He only admitted that he *received* stolen money—by giving his account information to "a guy who said he would invest in a trucking company [he] wanted to start"—with reasonable cause to believe that it had been stolen and then spent nearly $9000 on goods for himself.

The "sophisticated crime" is described only in the minutes of testimony. There, we see information suggesting that Battiste took control of another person's credit-union accounts by using the victim's personal information to change the email and phone numbers associated with the accounts. It also suggests Battiste then drew down nearly $90,000 from the victim's line-of-credit account at the credit union and wired the money to a bank account held by Battiste. And it alleges he withdrew all the money in various ways from the bank account over the next several days before closing it. Based on these allegations, Battiste had originally been charged with identity theft and first-degree theft. *See* Iowa Code §§ 715A.8, 714.1(1), 714.2(1). But he did not plead guilty to those offenses. He did not admit that he engaged in any of that conduct. And no evidence was submitted to prove the conduct. So the court could not consider it. *See Black*, 324 N.W.2d at 316.

In arguing otherwise, the State points out that Battiste agreed in his guilty plea "[t]he court may rely on the minutes of testimony for a further factual basis for my guilty plea" and agreed at sentencing that district court could use the PSI—

which referred to the minutes of testimony rather than describing the official version or victim's version of the offense. But those are not admissions from Battiste to the unproven criminal conduct alleged in the minutes. The parts of the minutes referring to how Battiste allegedly gained control of the victim's accounts and wired money were not necessary to establish a factual basis for his guilty plea to receiving and spending the stolen money in his account. *See State v. Gonzalez*, 582 N.W.2d 515, 517 (Iowa 1998). And even assuming that the cross-references to the minutes in PSI would be enough to let the court rely on the minutes if left unchallenged, *see State v. Chawech*, 15 N.W.3d 78, 85 (Iowa 2024), Battiste *did* challenge that version of the facts. The PSI included Battiste's statement refuting that version of the offense. And Battiste and his attorney both highlighted to the court at sentencing that he had not admitted to the conduct described in the minutes that the State was urging the court to consider.

Yet the district court still accepted the State's invitation and considered the unproven conduct in the minutes of testimony. We see no other possible basis for the court's repeated reasoning about the "sophisticated" nature of Battiste's offense. And so, Battiste has met his burden to show that the court relied on an improper consideration. We must thus vacate the sentence and remand for resentencing.

**SENTENCE VACATED AND CASE REMANDED.**

Tabor, C.J., concurs; Ahlers, J., dissents.

**AHLERS, Judge** (dissenting).

I don't see the problem the majority sees that results in vacation of Lance Battiste's sentence. Part of the reason I do not see the problem is because I do not take as expansive a view of the district court's use of the word "sophisticated" in describing Battiste's crime.

Battiste pleaded guilty to an amended charge of theft in the second degree for possessing stolen property. One of the elements of that offense is that Battiste had to know or have reasonable cause to believe that the property over which he exercised control was stolen. *See* Iowa Code § 714.1(4) (2021); Iowa Crim. Jury Instructions 1400.3. To establish the factual basis for that and other elements of his crime, in his written guilty plea, Battiste consented to the court "rely[ing] on the minutes of testimony for a further factual basis for [his] guilty plea."

So what do the minutes tell us about the factual basis and, in particular, about the element of the crime that the money over which Battiste exercised control was stolen? They tell us that someone stole money from the victim by changing the victim's email address and phone number linked to the victim's line of credit at a financial institution, initiating an unauthorized transaction drawing on the line of credit, and transferring the misappropriated funds to an account in Texas held by Battiste. Battiste admitted these facts by consenting to the court relying on the minutes to establish a factual basis. While Battiste did not admit to being the person who stole the money, he admitted he exercised control over the money stolen via the described scheme. With that admission, Battiste was a party to a crime that can be reasonably described as "sophisticated." Unlike the majority, I do not view mere reference to Battiste's crime as "sophisticated" to somehow

indicate that the district court reached a conclusion that Battiste is the one who stole the money. And its Battiste's burden to affirmatively show that the court relied on improper evidence. *See State v. Wickes*, 910 N.W.2d 554, 572 (Iowa 2018). Battiste failed to make this showing. The court never said Battiste stole the money. All the court said was that the crime was sophisticated. And, in comparison to many of the crimes we see, it was. I see nothing about that word choice that leads to the conclusion that the court was viewing Battiste as the person who stole the money as opposed to being the person who received it.

As I see no affirmative showing that the district court considered unproved charges or improper factors and find no merit in Battiste's other arguments, I find no abuse of discretion in the district court's sentencing decision. As such, I would affirm, and I respectfully dissent from the decision to vacate Battiste's sentence.